**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **JAMES T. STILE,** | |
| **Plaintiff,** | Civ. No. 16-3832 (RMB) |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA, *et al.*,** | |
| **Defendants.** | |

Appearances:

James M. Stile
FCI-Elkton
P.O. Box 10
Lisbon, Ohio 44432
        Plaintiff, *pro se*

Jessica Rose O'Neill
Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey 08101
        On behalf of Defendants

**BUMB, District Judge**

    This matter comes before the Court upon Defendants Colina,
Wilkes, Kwartin and Rehwinkle's ("Federal Defendants") motion for
partial summary judgment ("Fed. Defs' Mot. for Partial S.J."), ECF
No. 27; Fed. Defs' Brief in Support of Mot., ECF No. 27-1; Fed.
Defs' Statement of Material Facts Not in Dispute, ECF No. 27-2;

Plaintiff's Motion to Strike Defs' Affirmative Defense in Accordance with Fed. R. Civ. P. Rule 12(f) ("Pl's Opp. to Defs' Mot. for Partial S.J."), ECF No. 49;[1] Plaintiff's Dispute To Federal Defendants' Statement of Material Facts Not in Dispute ("Pl's Disputed Material Facts"), ECF No. 50; Brief in Opp. of Fed Def's Mot. for Partial S.J. ("Pl's Second Brief in Opp. to Defs' Mot. for Partial S.J."), ECF No. 50 at 9-93; Plaintiff's Supplemental Submission of Documentary Evidence Supporting Pl's Response to Defendants' Motion for Partial Summary Judgment ("Pl's Supplemental Submission of Evid."), ECF No. 51; Reply Brief in Further Support of Fed. Defs' Motion for Partial Summary Judgment ("Fed. Defs' Reply"), ECF No. 52-1; and Plaintiff's Sur-reply to Reply Brief Filed by the Defendants on August 10, 2017 ("Pl's Sur-reply," ECF No. 55.) The Court will decide the motion on the briefs, without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

---

[1] Federal Rule of Civil Procedure 12(f)(2) permits a party to move to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Such a motion must be made by a party either before responding to the pleading, or, if a response is not allowed, within 21 days after being served with the pleading. Id. Defendants filed an answer to the amended complaint on February 10, 2017. (Answer, ECF No. 26.) Plaintiff did not file his motion to strike Defendants' affirmative defenses until July 12, 2017. (ECF No. 49.) Because Plaintiff's motion to strike is late, the Court will treat it as Plaintiff's opposition to the Federal Defendants' motion for partial summary judgment.

## I.  BACKGROUND

The Federal Defendants bring this motion for partial summary judgment on Plaintiff's First Amendment retaliation claim against Correctional Officer M. Colina, and Plaintiff's Eighth Amendment claims against Correctional Officers Colina, Wilkes, Kwartin and Rehwinkle, on the basis that Plaintiff failed to exhaust his administrative remedies. (Fed Defs' Brief in Supp. of Mot., ECF No. 27-1 at 6-7.)

Upon screening Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), § 1915A(b), the Court permitted the following claims that are at issue in the Federal Defendants' partial motion for summary judgment to proceed: (1) Plaintiff's First Amendment retaliation claim against Officer Colina for reducing his work hours and filing an incident report against Plaintiff in retaliation for Plaintiff filing a BP-8 grievance against Colina (Opinion, ECF No. 8 at 20); (2) Plaintiff's Eighth Amendment claim against Officer Colina for compelling Plaintiff to perform work that was prohibited by the work limitations recommended by the FCI Fort Dix medical department (id. at 23); Plaintiff's Eighth Amendment claim against Officer Wilkes for forcing him to perform work beyond his medical restrictions by failing to obtain Plaintiff's medical records for many months, refusing to view Plaintiff's MRI reports, and refusing to review

3

the Social Security Administration's ruling on Plaintiff's disability based on spinal injuries (id. at 24); Plaintiff's Eighth Amendment claim against Officer Kwartin for failing to authorize a job change for Plaintiff at FCI Fort Dix, knowing Plaintiff was being forced to work beyond his medical restrictions (id.); and Plaintiff's Eighth Amendment claim against Officer Rehwinkle for failing to respond to Plaintiff's requests for more frequent mental health treatment when he suffered an exacerbation to his panic disorder and PTSD (id. at 25-27.)[2] In support of their motion for partial summary judgment, the Federal Defendants argue the above-described claims should be dismissed because Plaintiff failed to exhaust his administrative remedies.

In response, Plaintiff contends the BOP's administrative remedy program was unavailable due to Administrative Remedy Coordinator Tara Moran's "ploys … to make sure that BP-9's, BP-10's, and BP-11's are rejected and procedurally defaulted." (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶4.) Alternatively, Plaintiff asserts that he is not subject to the PLRA's exhaustion requirement because the PLRA was designed to limit frivolous lawsuits, not valid claims such as his. (Id., ¶4 at 5.) Plaintiff also contends that he gave Defendants notice of

---

[2] The Federal Defendants do not move for summary judgment on Plaintiff's equal protection claims or his FTCA claims. (Fed. Defs' Brief in Support of Mot., ECF No. 27-1 at 7 n.2.)

his claims by filing his BP-8 and BP-9, "but the Plaintiff was not bound to exhaust the administrative remedies as the Defendants could not provide monetary relief in the administrative remedy process." (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶5.)

The Federal Defendants replied that Plaintiff's attacks on BOP Administrative Remedy Coordinator Tara Moran are baseless. (Fed. Defs' Reply, ECF No. 52-1 at 3.) They further argue that administrative remedy forms submitted by Plaintiff in opposition to partial summary judgment are not associated with the claims that are at issue in this matter. (Id.)

In Plaintiff's Sur-reply, he submits that the exhibits he offered in opposition to the motion for partial summary judgment demonstrate "why the relevant administrative remedy requests never made it further than they did" and that "[t]he Administrative Remedy Process has been and continues to be rendered 'unavailable.'" (ECF No. 55, ¶3.) He also contends that "the administrative finality doctrine" does not apply to First Amendment retaliation claims. (Id., ¶5.)

III. DISCUSSION

   A.   Summary Judgment Standard

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); U.S. ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009). The moving party has the burden to show there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opponent then "'must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986) (footnote omitted in original)).

A party asserting that a fact is or is not genuinely disputed must support the assertion by citing materials in the record, including depositions, documents, affidavits or declarations or other materials. Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott, 550 U.S. at 380 (citing Fed. Rule Civ. Proc. 56(c)).

B.    PLRA Exhaustion Requirement

6

42 U.S.C. § 1997e(a), part of the Prison Litigation Reform Act ("PLRA"), provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion under this provision is mandatory. Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). This mandatory exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Furthermore, the provision requires "proper exhaustion." Woodford, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "The exhaustion requirement includes a procedural-default component, and a prisoner must comply with the prison grievance procedures to properly exhaust his claims." Veasey v. Fisher, 307 F. App'x 614, 616 (3d Cir. 2009) (citing Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004.)) A procedural default should be excused when the Plaintiff shows that although his grievance did not name a particular defendant, the grievance

alerted the prison officials to the problem. Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007).

Failure to exhaust is an affirmative defense that must be proved by a defendant. Shumanis v. Lehigh County, 675 F. App'x 145, 147 (3d Cir. 2017) (citing Jones v. Bock, 549 U.S. 199, 216, (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)). PLRA exhaustion is a question of law to be determined by a judge. Id. (citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010)). "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).

Under 42 U.S.C. § 1997e(a), "an inmate is required to exhaust those, but only those, grievance procedures that are [available]," in other words, "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (quoting Booth, 532 U.S. at 738). The Supreme Court provided three examples where an administrative remedy was "officially on the books" but not capable of use to obtain relief. Ross, 136 S. Ct. at 1859.

First, an administrative procedure is unavailable when "it operates as a simple dead end" because there is no authority to provide relief under the administrative program. Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001). A remedy is also

unavailable if administrative officials have apparent authority to provide a remedy "but decline ever to exercise it." Id.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. at 1859 (2016). Thus, "[w]hen rules are so confusing that ... no reasonable prisoner can use them, then they're no longer available." Id. (internal quotation omitted).

Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. This third example applies "either on a system-wide basis or in the individual case[.]" Ross, 136 S. Ct. at 1862. Plaintiff's argument that the BOP Administrative Remedy Program is unavailable falls into this third category. Because the unavailability of a grievance process may be shown on a system-wide basis, this Court must consider Plaintiff's submissions of grievance rejections other than the specific grievances at issue in this matter.

C.    The BOP Administrative Remedy Program

The BOP administrative remedy program applies to all inmates in institutions operated by the BOP. 28 C.F.R. § 542.10(b). The purpose of the program is "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." Id. § 542.10(a). The first step in the program is to present an

issue of concern informally to staff, in a manner established by the Warden of the facility. Id. § 542.13(a).

The second step of the administrative remedy program is to submit a formal written Administrative Remedy Request ("Remedy Request" or "Request") on form BP-9 within twenty calendar days "following the date on which the basis for the Request occurred." Id. § 542.14(a). An extension in filing time may be allowed upon demonstration of a valid reason for delay. Id. § 542.14(b). "In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame." Id.

28 C.F.R. § 542.14(c)(2) and (3) describe how to complete the BP-9 form:

> (2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.

> (3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½ x by 11") continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of

exhibits must be filed for any appeal (see §
542.15(b)(3)), the inmate is encouraged to
retain a copy of all exhibits for his or her
personal records.

At the next step of the administrative remedy program, an
inmate who is not satisfied with the Warden's response may submit
an Appeal, on form BP-10, to the Regional Director within 20
calendar days of the date the Warden signed the response. 28 C.F.R.
§ 542.15(a). The BP-10 form must be accompanied by a complete copy
or duplicate original of the institution Request and Response [BP-
9]. Id. § 542.15(b)(1).

An inmate may not raise issues in an Appeal that were not
raised in the lower level filings, nor may an inmate combine
Appeals of lower level responses with different case numbers into
a single Appeal. Id. § 542.15(b)(2). An inmate shall state the
reasons for the Appeal in the space provided on the form, and if
more space is needed, the inmate may use one letter-size (8 ½ x
11) continuation page. Id. § 542.15(b)(3). The inmate must provide
two additional copies of any continuation page and exhibits with
the Regional Appeal. Id.

If the inmate is unsatisfied with the Regional Director's
response, he may submit an Appeal, on form BP-11, to the General
Counsel within 30 calendar days of the date the Regional Director
signed the response. 28 C.F.R. § 542.15(a). The inmate must provide
three additional copies of any continuation page and exhibits to

the Central Office (General Counsel), including copies of exhibits used at the prior level(s) of appeal. Id. § 542.15(b)(3). The time limits for appeals may be extended when the inmate shows a valid reason for delay. Id. § 542.15(a).

The Coordinator at any level may reject and return a Request or Appeal to an inmate, without a response, if the Request or Appeal "does not meet any other requirement of this part." Id. § 542.17(a). An inmate must be provided a written notice, signed by the Coordinator, explaining the reason for rejection. Id. § 542.17(b). If the defect is correctable, the notice must inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal. Id. If the inmate is not given an opportunity to correct the defect and resubmit a Request or Appeal, he may appeal the rejection to the next appeal level. Id. § 542.17(c). The Coordinator at the next appeal level may affirm the rejection, direct that the submission be accepted at the lower level, or accept the submission for filing, and must inform the inmate of the decision by delivery of a receipt or rejection notice. Id.

Inmates may obtain assistance from other inmates, staff, family members or attorneys in preparing a Remedy Request or Appeal. Id. § 542.16(a). Obtaining assistance, however, is not a valid reason for exceeding a time limit, unless the delay was

caused by staff. Id. 28 C.F.R. § 542.19 permits inmates access to Administrative Remedy indexes and responses.

D. Analysis

1. Whether PLRA Exhaustion is applicable

Plaintiff first argues that he is not subject to the PLRA's exhaustion requirement. He contends that the PLRA was designed to limit frivolous prison conditions lawsuits, and because he has raised a valid claim, the exhaustion requirement is inapplicable to him. (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶4 at 5.) The PLRA exhaustion requirement is mandatory for claims concerning prison conditions. Porter, 534 U.S. at 524. PLRA exhaustion is not limited to claims that have been deemed frivolous because exhaustion serves purposes beyond weeding out frivolous allegations. Id. at 530. The Court rejects this argument.

Second, Plaintiff contends that even if the Administrative Remedy Program was available, "the Plaintiff was not bound to exhaust the administrative remedies as the Defendants could not provide monetary relief in the administrative remedy process." (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶5.) This argument has been dispelled by the Supreme Court. "[A]n inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint," even if it could not provide money damages. Booth, 532 U.S. at 734.

Third, Plaintiff asserts that the PLRA exhaustion requirement does not apply to First Amendment retaliation claims. (Pl's Sur-reply, ECF No. 55, ¶5 at 5.) Plaintiff is wrong; the PLRA exhaustion requirement applies to prisoners' First Amendment retaliation claims. See Richardson v. Sherrer, 344 F. App'x 755, 758 (3d Cir. 2009) (finding prisoner failed to exhaust administrative remedies under the PLRA for his First Amendment retaliation and other claims); see e.g. Mack v. Warden Loretto FCI, 839 F.3d 286, 296 (3d Cir. 2016) (holding prisoner exhausted his administrative remedies before bringing his First Amendment retaliation claim); see e.g. Sharpe v. Costello, 289 F. App'x 475, 478 (3d Cir. 2008) (finding summary judgment appropriate because prisoner "failed to come forward with any evidence to rebut the record evidence that he committed a procedural default by failing to complete the grievance process with respect to any grievance relating to his claim of retaliation.")

### 2. Exhaustion of the First Amendment retaliation claim against Officer Colina

According to the Declaration of Tara Moran, "[i]n the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained so that rapid verification may be made as to whether an inmate has exhausted administrative appeals on a particular issue." (Moran Decl., ECF No. 27-3, ¶4.) On November 7, 2016, Moran accessed the index of all administrative

remedies filed by Plaintiff, and found that Plaintiff never filed an administrative remedy at any level concerning his allegation that Colina retaliated against him by filing an incident report. (Id. ¶¶5-6.)[3] Nowhere in all of his submissions in opposition to summary judgment does Plaintiff assert that he filed a Remedy Request on this issue. Thus, to avoid the Federal Defendants' summary judgment on this claim, Plaintiff must show that the administrative remedy program was unavailable, which the Court addresses in Section III.D.5 below.

      3.    Exhaustion of Eighth Amendment Claims for forcing Plaintiff to work beyond his medical restrictions

The record shows that Plaintiff filed a BP-9 with the Warden on November 23, 2015, requesting time off his job assignment to spend more time in the law library. (Moran Decl., Ex. 2, ECF No. 27-4 at 6.) Plaintiff asserts that he filed a continuation page with this BP-9, wherein he stated:

> As concerns my medical, I should not be working a job as I am 100% disabled due to (2) two spinal surgeries which were unsuccessful from the late 1980's and early 1990's. A Social Security Administrative Law Judge did make this determination and FBOP should not be attempting to compel me to work. Medical should not be making determinations that I am

---

[3] Plaintiff left blank his response to the following statement in Federal Defendants' Statement of Material Facts Not in Dispute, "Plaintiff has never filed a request for administrative remedy at any level concerning the allegation that Colina retaliated against him by filing the December 2, 2015 Incident Report." (Fed. Defs' Statement of Material Facts Not in Dispute, ECF No. 27-2, ¶12; Pl's Disputed Material Facts, ECF No. 50, ¶12.)

> able to work with limitations that do not
> coincide with what the Social Security
> Administration declared more than 27 years
> ago.

(Pl's Disputed Material Facts, ECF No. 50, ¶19.) Plaintiff did
not provide a copy of this continuation page to the Court.

On December 18, 2015, when the Warden denied Plaintiff's
request for time off work to spend in the law library (Moran Decl.,
Ex. 2, ECF No. 27-4 at 7), Plaintiff appealed and also asked to be
removed from his work duties due to his medical condition. (Moran
Decl., Ex. 3, ECF No. 27-4 at 9.)

The Regional Director denied Plaintiff's request for a legal
idle, and informed Plaintiff that he could not raise the new issue
of whether his medical issues precluded him from working without
first raising the issue with the Warden in the prior stage of the
administrative remedy process. (Id. at 10.) Plaintiff did not
subsequently file a grievance with the Warden based on his claim
that medical issues precluded his work assignment. (Moran Decl.,
ECF No. 27-3, ¶6.)

Plaintiff alleges Tara Moran detached the continuation page
to his BP-9, precluding the Regional Director from addressing the
medical issue because it was not raised to the Warden. (Pl's
Disputed Material Facts, ECF No. 50, ¶19.) But even assuming Moran
detached Plaintiff's BP-9 continuation page, this did not stop
Plaintiff from appealing the rejection of his medical issue by

submitting his own copy of the BP-9 continuation page. Plaintiff also had the option of submitting a new Request for his medical issue. If untimely, he could have provided a valid reason for the delay by showing that he timely made the claim on a continuation page that was not submitted to the Regional Director, through no fault of his own. Plaintiff did not take these steps that were available to him.

    4.   <u>Exhaustion of Administrative Remedies for Eighth Amendment claim of deliberate indifference to need for increased mental health care</u>

For Plaintiff's Eighth Amendment claim against Officer Rehwinkle, Plaintiff filed a Remedy Request on August 31, 2015, seeking to be designated as a Care Level 3 Mental Health Inmate. (Moran Decl., Ex. 4, ECF No. 27-4 at 12.) Plaintiff's request was denied by the Warden on October 2, 2015, and the Warden noted that the Psychology Department had no record of Plaintiff requesting additional mental health treatment. (<u>Id.</u> at 13-15.) Plaintiff did not appeal to the Regional Director. (Moran Decl., Ex. 5, ECF No. 27-4 at 17) (depicting no entry in the Administrative Remedy Generalized Retrieval for Remedy 834870-R1).

Plaintiff has not provided any evidence that he completed or even attempted to complete the administrative remedy process by filing a BP-10 to the Regional Director, and a BP-11 to the Central Office for this particular grievance. In fact, without referencing a particular grievance, Plaintiff stated:

> [a]lthough the Plaintiff did file a BP-8 and
> BP-9 and did not complete the remaining BP-10
> and BP-11, the Defendants were given
> sufficient notice through the subsequent
> filing of the Administrative Tort Claim of
> relief requested (monetary damages) that they
> cannot make claim of prejudice of the BP-10
> and BP-11;

(Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶2), and

> In error, this Plaintiff did give notice with
> his BP-8 and BP-9 which is not contested by
> the Defendants, but the Plaintiff was not
> bound to exhaust the administrative remedies
> as the Defendants could not provide monetary
> relief in the administrative remedy process ….

(Id., ¶5.)

First, the Court notes the Federal Defendants have not moved for summary judgment on Plaintiff's FTCA claims, and FTCA exhaustion is not at issue here. *See* supra note 2. Second, as the Court stated above, PLRA exhaustion of § 1983 and Bivens claims is mandatory, regardless of the unavailability of monetary damages in the administrative remedy process, even where the only relief sought by the plaintiff was monetary damages. Booth, 532 U.S. at 740-41.

### 5. Whether the Administrative Remedy Program was available

Plaintiff contends the Administrative Remedy Program is unavailable because Tara Moran "strips down" BP-9 forms by removing the accompanying BP-8 form. (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶4.) The BP-9 is then mailed to the Northeast

18

Regional Office, where it is rejected for failure to attempt informal resolution because the BP-8 was not attached to the BP-9. (Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶4.)

According to Plaintiff, Moran also strips continuation pages from BP-9 forms, and returns the BP-9 form to the inmate to remedy the deficiency in five days. (Id.) She returns the BP-9 to inmates in the Thursday evening mail, knowing there will be no staff assistance until Monday to help inmates locate copies of either the BP-8 or a missing continuation page. (Id.)

The Federal Defendants contest Plaintiff's claim that when a BP-9 form is returned to an inmate, it is intentionally stripped of the BP-8 form and exhibits to prevent inmates from succeeding at the next level of the administrative appeal process. (Fed. Defs' Reply, ECF No. 52-1 at 4.) The Federal Defendants explain that BOP Program Statement 1330.18, § 8(c)(3) alerts inmates that their continuation pages and supporting exhibits will not be returned to them with their response, so they should keep copies of exhibits for any appeal. (Id.) The Federal Defendants contend that requiring inmates to keep copies of exhibits for appeals does not render the administrative remedies unavailable. (Id.)

In his Sur-Reply, Plaintiff contends that Defendants' citation to Program Statement 1330.18 is made in bad faith because continuation pages and previously filed BP-8s are not exhibits. (ECF No. 55, ¶5 at 4-5.) Plaintiff further asserts that a copy of

19

the BP-8 is necessary for review at all levels of the grievance process. (Id.)

Plaintiff offered the following documents in support of his argument that the administrative remedy program is unavailable. First, Plaintiff submitted a copy of a September 16, 2015 letter from inmate Jaime Rodriguez to the Administrative Remedy Coordinator, complaining about the "ploys" of the Administrative Remedy Coordinator. (Pl's Opp. to Defs' Mot. for Partial S.J., Ex. B, ECF No. 49 at 9.) In this letter, Rodriguez accused the Administrative Remedy Coordinator of previously rejecting his grievances for unwarranted or false reasons. (Id.) Rodriguez further stated:

> Now you have taken to responding to my (and other inmate) grievances without returning any of the submitted copies of the continuation page which are necessary for Regional and Central Office review. You have not done this before so either you are purposely doing this in hopes of interfering with the grievance process at the higher stages of review, or you have suddenly become incompetent and are unqualified for your position. I suspect it is the former and thus ask you to please cease this activity and act professionally.

(Id.)

The Court gives little weight to this evidence because it is an unsupported allegation, without a response by the Administrative Remedy Coordinator. Moreover, defects in Remedy Requests, such as failure to submit the required copies or

attachments, or failure to enclose the required single copy of lower level submissions "are examples of correctable defects." BOP PS 1330.18, § 11(b)(2). Thus, even if a continuation page or a lower level submission, such as a BP-8, is removed from a BP-9 that is rejected, this is a correctable defect, allowing the grievance process to continue.

Plaintiff also submits a letter by Rodriguez sent to the Supervising Attorney of Legal Affairs at FCI Fort Dix on October 15, 2015. (Ex. A, ECF No. 49 at 8.) Rodriguez wrote:

> I have previously written the Remedy Coordinator regarding improper and un-professional conduct in his/her interference with my right to pursue grievances which has culminated with the Coordinator intentionally sending the responses to my grievances without returning any of the submitted copies of the continuation page. I did not expect a response and only asked the Remedy Coordinator to please stop and act professionally. You responded to my letter in defense and so I direct this to you.
>
> On October 8, 2015, I again received a response (to No. 834854) without any copies of the grievance's continuation page in a deliberate attempt to interfere with my ability to pursue the matter at the Regional and Central Office levels. This is evidenced by the fact that another inmate, Michael Crooker, simultaneously received a grievance response with the copies of his continuation page returned. Receiving them at the same time, why would he receive his copies yet mine are again missing? This game needs to stop. If the Remedy Coordinator cannot act professionally and properly execute his/her duties, then he/she should not hold such position.

> I do not expect a response but I ask that you
> attempt to correct this matter. I highlight
> that, as Supervisory Attorney, it is your duty
> to inform the Remedy Coordinator that his/her
> actions are in violation of Bureau policy and
> of my First Amendment rights…

(Pl's Opp. to Defs' Mot. for Partial S.J., Ex. A, ECF No. 49 at 8.)

The Court gives little weight to this document. Rodriguez assumes that because another inmate received copies of his continuation page from the Coordinator, then the Coordinator must have been intentionally interfering with Rodriguez's grievances. There are other possible explanations for this situation. For example, Rodriguez's continuation page may have been misplaced by the Coordinator or someone else, a situation which is easily correctable if the inmate retained a copy, or by writing a new continuation page. Further, this letter from Rodriguez indicates that the Supervisory Attorney defended the Coordinator against Rodriguez's accusations, but that information was not provided to this Court for evaluation.

Plaintiff also submitted an exhibit which he describes as:

> a complete set of filing of administrative
> remedy requests as concerns the obstruction of
> justice of impeding the administrative remedy
> process by Administrative Remedy Coordinator
> Tara Moran which does render the exhaustion of
> administrative remedies "unavailable" even if
> the Plaintiff was required as a matter of law
> to exhaust his remedies per the PLRA.

(Pl's Opp. to Defs' Mot. for Partial S.J., ECF No. 49, ¶7.) First, there is a BP-8 form that Plaintiff signed on March 31, 2017, stating that Moran "has been removing my attachment page of BP-9's and returning same without attachment page and submissions." (Ex. C, ECF No. 49 at 16.)

Plaintiff received the following BP-8 response:

> In review of your BP-8 complaint you allege you did not receive a copy of your attachments for two separate BP9's. On 03-31-2017 you reported this to staff, who immediately notified the legal department in order to retain a copy of the attachment pages. You were issued a copy of the continuation pages by unit team staff on 03-31-2017 all other forms are deemed exhibits.
>
> Exhibits will not be returned with the response because copies of exhibits must be filed for any appeal, the inmate is encouraged to retain a copy of all exhibits for his or her personal records.

(Id. at 17.)

On April 7, 2017, Plaintiff filed a BP-9, stating he could recall four BP-9s that were returned with the BP-8 and continuation page missing, and it was his belief that this was an intentional frustration of the Administrative Remedy Process. (Id. at 15.) He asked that someone other than Moran respond to his grievance, because she was "the responsible party," and he noted the problem seemed to occur when the BP-9 contained allegations against staff members. (Id.)

This BP-9 was rejected based on untimeliness with a remark, "Submit dates for other instances if you feel they are timely." (Pl's Opp. to Defs' Mot. for Partial S.J., Ex. C, ECF No. 49 at 14.)

Plaintiff appealed to the Regional Office. (Id. at 13.) He argued that by the time he discovered Moran's manipulations, some of his grievances were untimely, but the underlying problem of his BP-8s disappearing still needed to be addressed. (Id.) The Regional Office rejected the appeal, concurring with the untimeliness decision. (Id. at 12.)

Plaintiff then appealed to the Central Office, explaining that it only occurred to him on March 31, 2017, when he was in Counselor Malloy's office and she contacted Moran about "numerous BP's that were stripped of the continuation pages and the BP-8's that accompanied the BP's," that Moran had been doing this for some time to undermine the Administrative Remedy Process. (Id. at 10-11.) The Central Office's response to this Appeal, if there was one, was not provided to the Court.

Overall, this exhibit shows that when Plaintiff timely complained about two BP-9 forms being returned to him without the continuation pages, the situation was promptly remedied. It is only when he complained further that other BP-9s had been returned to him without all of the necessary pages in the past that his Appeal was rejected, and he was instructed to "submit dates for

24

other instances if you feel they are timely." Based on the documents provided, Plaintiff did not follow this instruction. These documents do little to demonstrate that the Administrative Remedy Program was unavailable, only that Plaintiff was suspicious that loss of some of his administrative remedy paperwork was intentional.

Plaintiff later submitted additional evidence in support of his opposition to the Federal Defendants' motion for partial summary judgment, Exhibits A-Q. (Pl's Second Brief in Opp. of Fed Def's Mot. for Partial S.J., ECF No. 50 at 10 (Table of Contents.)[4]

Plaintiff's Exhibit H is a BP-8 by Plaintiff, which includes a continuation page. (ECF No. 50 at 61-62.) The BP-8 appears primarily to be a complaint about Case Manager Boyd refusing to assist Plaintiff in preparing to make an RRC placement request, although Plaintiff also complains about Boyd behaving in an unprofessional manner by calling him a name, and states "this needs to be addressed by staff such as the Associate Warden or Warden." Plaintiff's final statement on the continuation page of BP-8 was "I expect that I am to be provided the "21 month package" [referring to a package provided in preparation for RRC placement]

---

[4] Exhibits A-G are the Declaration of Tara Moran, Plaintiff's Administrative Federal Tort Claim, and duplicates of documents already submitted by Plaintiff and discussed above. Exhibits P and Q are not relevant to Plaintiff's argument that the BOP administrative remedy program was unavailable.

in August of 2017 and that Unit Team make the appropriate recommendations as concerns RRC." (Pl's Second Brief in Opp. of Fed Def's Mot. for Partial S.J., ECF No. 50 at 62.)

The response to this BP-8 by the Unit Manager [Boyd] was that "[i]nmates are considered for RRC placement 17-19 months from their release date. You are currently 35 months from release therefore you are not being considered for RRC placement at this time." (<u>Id.</u> at 61.)

Unhappy with the response, Plaintiff filed a BP-9, in which he stated:

> Contrary to my request that an answer to the BP-8 be made by an Associate Warden, it was made by Boyd. I insist that the Associate Warden or the Warden himself review both the BP-8 and BP-9 in this matter. As relief, I just want to be spoken to with respect the same as I give staff and not be demeaned with innuendos as happened here. I humbled myself to Boyd when he asked me if we could arrive at an "informal resolution" with the BP-9 that I filed against Counselor Malloy . . .

(<u>Id.</u> at 59.)

Plaintiff received a Rejection Notice in response to his BP-9, containing a remark that the BP-8 and BP-9 did not match. (<u>Id.</u> at 58.) Plaintiff contends this was "an attempt to reject and cause confusion so that the BP-9 would be procedurally defaulted as 'untimely,'" and further that "[t]he Administrative Remedy Coordinator has been known to switch the BP-8's that are attached to two different BP-9's and claim that they do not match. This is

but another ploy . . ." (Pl's Second Brief in Opp. of Fed Def's Mot. for Partial S.J., ECF No. 50 at 26-27.)

Exhibit K is a subsequent Rejection Notice, dated July 5, 2017, showing that Plaintiff objected to the first Rejection Notice based on the BP-8 and BP-9 not matching, and this resulted in a new Rejection Notice being issued with the remarks that "BP-8 and BP-9 are not requesting the same relief." (Id. at 68.) Plaintiff also disagreed with this conclusion, arguing that his request for relief was to be treated with respect by staff. (Id.)

Plaintiff now argues that "[w]hat is going on here is that the Administrative Remedy Coordinator is attempting to keep this BP-9 out of view of the attention of the Warden in her attempt to cover-up for the staff that are being complained about." (Id. at 28.)

The Court disagrees with Plaintiff's conclusions regarding this BP-8 and BP-9. Contrary to Plaintiff's assertion that there is no requirement for the BP-8 and BP-9 to match, the BP-8 form states:

> You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9, you must ordinarily attempt to informally resolve your complaint through your Correctional Counselor. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint and state names of staff contacted.

(Pl's Second Brief in Opp. to Defs' Mot. for Partial S.J., ECF No. 50 at 61.) Furthermore, a BP-9 must include only a single complaint or a reasonable number of closely related issues. See 28 C.F.R. § 542.14(c)(2). Thus, it is clear that the BP-8 must contain the same issue(s) as the BP-9. This BP-9 was reasonably rejected, with an opportunity for correction, because the BP-8 appeared to be a grievance about staff refusing to assist Plaintiff with RRC placement, and the BP-9 appeared to be about Case Manager Boyd calling Plaintiff an obscene name.

Plaintiff submitted additional documents related to this particular grievance with his Sur-reply. (Pl's Sur-reply, ECF No. 55 at 20.) Despite the two rejections of the BP-9, Warden Ortiz responded to the BP-9, stating that Plaintiff's allegation of staff misconduct would be investigated, but due to the privacy interest of the staff member, the investigation results would not be disclosed to Plaintiff. (Id. at 22.) Furthermore, Warden Ortiz said Plaintiff's issue regarding RRC placement would not be addressed because it was not included in the BP-9. (Id.)

Plaintiff appealed to the Regional Director, arguing that both his complaint regarding RRC placement and his complaint about Boyd calling him a name should have been addressed by the Warden. (Id. at 17.) Further, he accused Tara Moran of attempting to interfere with his exhaustion of grievances by rejecting the BP-8 and BP-9 because they did not match, and that they contained

different requests for relief. (Pl's Sur-reply, ECF No. 55 at 17.)
The Regional Director responded that the Warden adequately
addressed Plaintiff's grievance by referring Plaintiff's complaint
against Boyd for an investigation, and Plaintiff's new allegations
in the BP-10 about how the BP-8 and BP-9 were handled would not be
addressed because they were not raised in the lower level filings.
(Id. at 19.)

The Court finds it was reasonable for the Warden and Regional
Director to restrict the BP-9 to the issue of misconduct by Boyd
because nowhere in his BP-9 did Plaintiff complain that his request
for assistance with RRC Placement was denied. (Pl's Sur-reply, ECF
No. 55 at 20-21.)

Exhibit I to Plaintiff's Second Brief in Opposition to Partial
Summary Judgment is a Regional Administrative Remedy Appeal dated
February 6, 2017, rejected by the Regional Director on February
16, 2017. (ECF No. 50 at 63.) There is a handwritten note by
Plaintiff on the Rejection Notice which states:

> Just received in mail on February 23rd at FCI
> Fort Dix. Your delay in sending it or it
> arriving to me makes this reply untimely.
> Nobody here at Unit Team is going to attest
> when I received it so please do not return to
> me as untimely. You need to resolve why it
> took from February 16-23 to be returned to me.

(Id.)

Plaintiff offers this exhibit to show that the 7-day delay in
the mail, combined with the fact that he received the BP-10 on a

Thursday, with staff assistance being unavailable until Monday, made it impossible for him to respond within 10 days, rendering the administrative remedy procedure unavailable. (Pl's Second Brief in Opp. to Defs' Mot. for Partial S.J., ECF No. 50 at 28.)

This exhibit does not establish that Plaintiff could not complete the administrative remedy process. Plaintiff apparently chose not to seek an extension of time and instead assumed an extension would not be granted. "'[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority.'" Spada v. Martinez, 579 F. App'x 82, 85 (3d Cir. 2014) (quoting Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011); see also Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000)). According to this exhibit, Plaintiff did not give the prison officials an opportunity to accept an untimely grievance and reach the merits of his complaint.

Exhibit J is a BP-11 to the Central Office signed by Plaintiff on May 26, 2017, stating "the Administrative Remedy Coordinator again discarded my BP-8 with its [attached] copies of the legal mails in question …" (Pl's Second Brief in Opp. to Mot. for S.J., ECF No. 50 at 66.) Plaintiff demanded that the Central Office conduct an investigation into the obstruction of the administrative remedy process by Tara Moran. (Id. at 67.) This exhibit shows only that Plaintiff complained about Moran

discarding his BP-8. It does not establish that she had in fact discarded his BP-8 intentionally, and that this prevented Plaintiff from proceeding through the levels of an administrative remedy. To the contrary, this exhibit, a BP-11, suggests Plaintiff was able to bring this particular grievance to the Central Office, the final level of administrative review.

Plaintiff's Exhibits L-O to Plaintiff's Second Brief in Opposition to Defs' Mot. for Partial Summary Judgment contain the following:

• a March 23, 2015 BP-9 Rejection Notice to inmate Jaime Rodriguez for failing to attempt informal resolution prior to filing his BP-9, and permitting him to resubmit in 5 days (ECF No. 50 at 74);

• a March 24, 2015 letter from Rodriguez to the Administrative Remedy Coordinator, seeking waiver of informal resolution pursuant to 28 C.F.R. § 542.13(b) because the complaint involved retaliation by staff, and he alleged no informal resolution was possible (<u>Id.</u> at 73);

• an April 20, 2015 letter from Rodriguez to the Administrative Remedy Coordinator, stating it was his third time to resubmit a BP-9, and that he did not understand why she insisted on informal resolution; however, he did attempt informal resolution on April 1, 2015, and he had not received a response (<u>Id.</u> at 75);

• An April 24, 2015 BP-9 Rejection Notice which states: "see your Unit Manager for a BP-8 response" (Id. at 76);

• A handwritten letter to the Administrative Remedy Coordinator, stating that this was Rodriguez's fifth attempt to submit his BP-9, and demanding to know the Coordinator's name so he could sue her in a Bivens action (Id. at 77);

• a June 3, 2015 BP-10 from Rodriguez complaining about a staff member's retaliation against him, and noting that his BP-9 was rejected four times in an attempt to discourage his filing (Id. at 78);

• a July 7, 2015 BP-10 response from the Regional Director to Rodriguez, stating that the Warden adequately addressed his claim of staff retaliation and found no evidence that staff inappropriately moved him to a different unit; and that his separate complaint about the handling of his BP-9 had to be presented first to the Warden in a separate remedy request (Id. at 79).

These exhibits suggest that if the procedures of the Administrative Remedy Program are followed by the inmate, the grievance will proceed through each level. The informal remedy process was available to Rodriguez, and when his attempts at informal resolution failed, his retaliation claim proceeded to the next level. There is nothing here that shows Rodriguez's

retaliation claim could not be brought to the Central Office to exhaust the final level of administrative review.

Alternatively, Plaintiff contends the procedural default of his retaliation claim against Colina should be excused. (Pl's Second Brief in Opp. to Defs' Mot. for Partial S.J., ECF No. 50 at 23.) Plaintiff alleges Colina made a serious threat against him if he filed a grievance, and Colina followed through with the threat by writing an incident report alleging Plaintiff attempted to bribe an officer. (ECF No. 50 at 23.) Plaintiff argues that substantial threats of retaliation by staff render the administrative remedy process unavailable. (Id.)

In Davis v. Anderson, a panel of the Third Circuit held that the BOP's Administrative Remedy Program was available to an inmate although an officer had threatened him with further retaliation if he kept filing grievances. 619 F. App'x 68, 71 (3d Cir. 2015) (per curiam). The Third Circuit explained that under such circumstances, the inmate could have bypassed the institution level and filed a complaint directly with the Regional Director, pursuant to 28 C.F.R. § 542.14(d)(1). Id. The inmate had not provided any evidence that this alternative procedure was unavailable. Id.

28 C.F.R. § 542.14(d)(1), exceptions to initial filing at institution, provides that an inmate can submit his Request directly to the Regional Director by clearly marking the Request

33

"Sensitive" and explaining why the inmate fears for his safety or well-being if his Request became known at the institution. Plaintiff did not attempt to exhaust his grievance against Colina in this manner. Therefore, the Court rejects Plaintiff's contention that Colina's retaliation against him made the administrative remedy program unavailable.

On August 9, 2017, Plaintiff filed a supplemental submission of documentary evidence. (ECF No. 51.) This included an April 9, 2017 letter from inmate Sean Bundy to the Warden. (Ex. A, ECF No. 51 at 4.) Bundy complained to the Warden that two staff members would not provide him with a BP-8 form so he could begin the grievance process when he was not permitted to have an unmonitored attorney phone call before his court teleconference. (Id. at 4-5.) Plaintiff's counselor, who would usually provide the BP-8 form, was not available at the time. (Id. at 5.)

Associate Warden Mason responded to the letter, stating that Bundy was in fact provided the remedy he had requested through the informal resolution process when he was permitted a legal phone call on April 11, 2017. (Id. at 7.) Mason also addressed Bundy's accusation of staff misconduct, noting that Bundy had been directed specifically to get the BP-8 form from his assigned Correctional Counselor, and this led to his informal resolution of the matter. (Id.) Staff did not act outside the scope their duties by directing Bundy to his assigned Correctional Counselor to obtain a BP-8 form.

(Pl's Supplemental Submission of Evid., Ex. A, ECF No. 51 at 7.)
This exhibit does not show that the administrative remedy process
was unavailable.

Plaintiff also submitted a BP-8 form from inmate Jaime
Rodriguez, which stated that on July 19, 2017, Rodriguez's most
recent BP-9 form was returned without any of the copies of exhibits
that he had provided. (Ex. B, ECF No. 51 at 8.) 28 C.F.R. §
542.14(c)(3) provides that "exhibits will not be returned with the
response" to a BP-9, and the inmate is encouraged to retain a copy
of all exhibits for his or her personal records." Therefore, this
exhibit does not indicate any improper conduct of staff interfering
with the grievance process. Moreover, Plaintiff did not provide
the response to this BP-8 to show that Rodriguez's complaint could
not progress through the administrative remedy program.

In his Sur-reply on September 11, 2017, Plaintiff again
submitted additional evidence in support of his argument that the
administrative remedy program was unavailable. Exhibit A is an
August 14, 2017 Memorandum for Inmate Population, reducing the
availability of copy machines to two hours per day. (Pl's Sur-
reply, ECF No. 55 at 9.) Plaintiff contends this is an obstruction
of the administrative remedy process because 2,200 inmates must
use the copy machine during these limited hours. (ECF No. 55, ¶7.)
The Court finds this is not relevant to Plaintiff's ability to
make the required copies for his grievances in 2015.

Plaintiff's Exhibit B to his Sur-reply begins with a BP-8 form submitted by Plaintiff, where he claimed that on August 14, 2017, staff members Willis and Gilyard refused his request for a roll of toilet paper, free of charge, because he was not indigent. (Pl's Sur-reply, Ex. B, ECF No. 55 at 10.)

Plaintiff submitted a BP-9, dated August 17, 2017, where he argued that Counselor Willis' refusal to provide toilet paper because Plaintiff was not indigent violated BOP regulations. (Id. at 12.) And, he submitted a separate BP-9 dated August 17, 2017, stating that he asked Unit Manager Gilyard for toilet paper on August 14 or 15, and Gilyard denied his request based on the fact that Plaintiff was not indigent. (Pl's Sur-reply, ECF No. 55 at 13.) Plaintiff also submitted a third BP-9 dated August 17, 2017, stating that Counselor Malloy denied his request for toilet paper on August 15 or 16, because he was not indigent. (Id. at 14.)

Plaintiff received a Rejection Notice to his BP-9s, telling him to combine his three BP-9s into one, with one continuation page, because they were all related. (Id. at 11.) Plaintiff responded by arguing that his three BP'9s were separate because they were complaints about each staff member. (Id. at 15.) Plaintiff received a second Rejection Notice, again telling him to combine his BP-9s. (Id. at 16.) Plaintiff insisted that his complaints be treated as three separate incidents, or else he would file a BP-10. (Id.)

The Court finds that the Administrative Remedy Coordinator responded reasonably by directing Plaintiff to refile a single remedy request, despite Plaintiff's disagreement with the decision. There is no indication that if Plaintiff had complied his claims against each staff member involved would not have been addressed. Therefore, this is not persuasive evidence that the administrative remedy program was unavailable.

Plaintiff also cites two cases in support of his claim that the BOP administrative remedy program was unavailable. First, he cites Ciraolo v. Hollingsworth, Civ. Action No. 12-7159(RMB), 2013 WL 255654 (D.N.J. Jan. 23, 2013), arguing that Moran committed perjury in that case by stating Ciraolo did not exhaust his BP-10 and BP-11 Appeals. (Pl's Second Brief in Opp. to Mot. for S.J., ECF No. 50 at 20.) In Ciraolo, the BOP offered the declaration of Tara Moran, stating that she accessed the BOP computerized index of administrative remedies and found that Plaintiff exhausted the BP-9 and BP-10 levels of administrative review but did not file an appeal with the Central Office. Ciraolo, Civ. Action No. 12-7159 (RMB), 2013 WL 255654, at *4 (D.N.J. Jan 23, 2013). Ciraolo produced a copy of his BP-11 to the Central Office, with a certified mail receipt indicating the BP-11 was delivered to the proper address. (Id.)

The Ciraolo case does not establish that Moran committed perjury. It is possible that Ciraolo's BP-11 was not entered into

the BOP's SENTRY index, causing Moran to believe it was never filed. There is nothing in the Ciraolo case suggesting that Moran was responsible for the BP-11 not being entered into the SENTRY index. According to BOP Program Statement 1330.18, § 13(a), Remedy Processing, it is an Administrative Remedy Clerk, not the Coordinator, who enters Remedy forms into the SENTRY Index. Furthermore, unlike Plaintiff here, Ciraolo was able to establish that he exhausted his Central Office appeal, despite it not being entered in the SENTRY index.

Second, Plaintiff cites Jones v. Hollingsworth, Civ. Action No. 15-2401(RMB) (D.N.J. Jan. 21, 2016), as evidence that Tara Moran strips down BP-9 forms by removing continuation pages and the underlying BP-8s. In that case, Jones was given the opportunity to explain to the Central Office (and later to the Court) why he did not attach the necessary exhibits to his Appeal to the Regional Director, but he failed to provide an explanation. (Jones v. Hollingworth, Civ. Action No. 15-2401(RMB) (D.N.J) Opinion, ECF No. 11 at 8.) Plaintiff's assumption that Moran interfered with Jones' exhaustion of administrative remedies is unsupported speculation.

In sum, contrary to Plaintiff's assertion that the administrative remedy process was unavailable, a query of the SENTRY index for Remedy Requests filed by Plaintiff between December 2, 2015 and November 7, 2016 returned 65 entries. (Moran

Decl., Ex. 9, ECF No. 27-4 at 28-46.) Although the record does not establish how many of these grievances Plaintiff exhausted, it shows, at a minimum, that Plaintiff exhausted the grievances for his claim that staff paid him less than other inmates with the same work assignment. (Moran Decl., Exhibits 6-8, ECF Nos. 27-4 at 18-27.)

Plaintiff has not provided evidence sufficient to create a genuine issue of disputed material fact that he or other inmates could not have exhausted their grievances by complying with the regulations of the BOP Administrative Remedy Program. See Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") Even in instances where Plaintiff and other inmates suspected intentional interference with the paperwork submitted for grievances, the Administrative Remedy Program allows for resubmission of paperwork and extension of deadlines for valid reasons.

Plaintiff noted that in 2017 there were 2,200 inmates who had to share a copy machine to make copies for their grievances. There is no doubt that with such a volume of paperwork, pages of BOP forms have been lost or even discarded. Although understandably frustrating for an inmate when he has to resubmit pages, he is

permitted to do so, and is permitted to seek an extension of time for a valid reason. Plaintiff did not offer any evidence that the administrative remedy program was unavailable because Administrative Remedy Coordinators denied requests for extensions supported by valid reasons. Plaintiff has not established a genuine dispute of material fact demonstrating that the BOP Administrative Remedy Program was unavailable.

IV.  CONCLUSION

    For the reasons discussed above, the Federal Defendants' motion for partial summary judgment is granted.


An appropriate order follows.

DATE:  March 15, 2018

                    s/Renée Marie Bumb_____
                    **RENÉE MARIE BUMB**
                    **United States District Judge**