NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| **JAMES T. STILE,** | |
| **Plaintiff** | Civ. No. 16-3832 (RMB) |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA, _et al._,** | |
| **Defendants** | |

Appearances:

James M. Stile
FCC Allenwood Low Security
P.O. Box 1000
White Deer, PA 17887
        Plaintiff, _pro se_

Jessica R. O'Neill
Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey 08101
        On behalf of Defendants

**BUMB, District Judge**

This matter comes before the Court upon the motion for judgment on the pleadings by the Defendants, Officer Colina, Officer A. Burns and the United States of America (collectively the "Defendants") (ECF No. 65) (Defendants' Brief, ECF No. 65-1); (Plaintiff's motion for temporary restraining order, ECF No. 68);

and Plaintiff's Brief in Supp. of Pl's Response to Defs' Mot. for Judgment on the Pleadings ("Plaintiff's Brief,") ECF No. 69.) The Court will decide the motions on the briefs, without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

I. PROCEDURAL HISTORY

Plaintiff filed a complaint on June 26, 2016. (Compl., ECF No. 1). This Court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A and determined that Plaintiff failed to state a claim upon which relief could be granted but permitted Plaintiff to file an Amended Complaint. (Memorandum and Order, ECF No. 2.) Plaintiff filed an Amended Complaint on September 8, 2016 (Am. Compl., ECF No. 5), which this Court also screened pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A and dismissed Plaintiff's Title VII claims under 42 U.S.C. § 2000e-3, the Americans with Disability Act under 42 U.S.C. § 12101, discrimination claims under 42 U.S.C. § 1981, First Amendment access to the courts, First Amendment retaliation based on a grievance filed in Fall 2015, and claims based on BOP Program Statement 1315.07(1). (Opinion, ECF No. 8; Order, ECF No. 9.) The Court dismissed all claims of supervisory liability, resulting in the dismissal of Defendants Malloy, Robinson, Mason, Hazelwood, and Hollingsworth. (Id.)

At that point, the Court permitted the following claims to proceed: Plaintiff's claim that Defendant Colina retaliated against him as a result of a grievance Plaintiff filed on December

2, 2015; Plaintiff's claim that Defendants Colina and Burns violated his right to equal protection; Plaintiff's claim that Defendants Colina, Wilkes, Kwartin, and Rehwinkle demonstrated deliberate indifference to his medical needs; and Plaintiff's claim under the Federal Tort Claims Act ("FTCA") against the United States. (Opinion, ECF. No. 8 at 29-30.)

Defendants then sought partial summary judgment on certain of the remaining claims. In an Opinion and Order dated March 26, 2018, the Court granted summary judgment to Defendants on Plaintiff's remaining retaliation claim and Eighth Amendment claim for deliberate indifference to his medical needs. (Opinion, ECF No. 60; Order, ECF No. 61). As a result, the only claims remaining are Plaintiff's claim that Defendants Colina and Burns violated Plaintiff's Fifth Amendment right to equal protection and his FTCA claim against the United States.

Defendants now move for judgment on the pleadings.

II.  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

A.    Rule 12(c) Standard of Review

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). To succeed on a motion for judgment on the pleadings, a movant must show "there are no material issues of facts, and he is entitled to judgment as

a matter of law." <u>Zimmerman</u>, 873 F.3d at 417 (quoting <u>Sikirica v.</u>
<u>Nationwide Ins. Co.</u>, 416 F.3d 214, 220 (3d Cir. 2005) (citing <u>Soc'y</u>
<u>Hill Civic Ass'n v. Harris</u>, 632 F.2d 1045, 1054 (3d Cir. 1980)).
When deciding a motion for judgment on the pleadings, a court must
accept the non-moving party's factual allegations as true and draw
all reasonable inferences in the nonmoving party's favor. <u>Id.</u> at
418.

      B.    <u>Whether a Bivens Remedy is Available</u>

      1.   Standard of Law

While Defendants' motion for partial summary judgment was
pending, the Supreme Court rendered its opinion in <u>Ziglar v.</u>
<u>Abbasi</u>, 137 S. Ct. 1843 (2017).[1] In <u>Abbasi</u>, the Court noted Congress
passed a statute in 1871, later codified at 42 U.S.C. § 1983,
entitling a person to money damages if a state official violated
his or her constitutional rights. <u>Id.</u> at 1854. Congress, however,
has never passed an analogous statute for violations of
constitutional rights by federal officials. <u>Id.</u>

---

[1] The Supreme Court decided <u>Ziglar v. Abbasi</u> on June 19, 2017,
requiring a special factors analysis for <u>Bivens</u> claims if raised
in a new context. 137 S.Ct. 1843. <u>Abbasi</u> was not in effect when
this Court screened the Amended Complaint on October 20, 2016
(Opinion, ECF No. 8) or when Defendants filed their motion for
partial summary judgment on February 10, 2017 (Defs' Mot. for
Partial S.J., ECF No. 27). Therefore, Defendants properly brought
their <u>Abbasi</u> defense in a motion for judgment on the pleadings
filed on June 8, 2018.

The Court described its concern with the separation of powers between Congress and the courts.

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts?"

Abbasi, 137 S.Ct. at 1857 (quoting Bush v. Lucas, 462 U.S. 367, 380 (1983)).

The Court reviewed the three cases where it had previously implied a remedy for constitutional violations by federal actors. In 1971, the Supreme Court decided Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), holding that, absent statutory authorization, the Court would enforce a damages remedy to compensate persons injured by Fourth Amendment unreasonable searches and seizures by federal officers. Id. at 1854.

The Court recognized an implied Bivens cause of action in two later cases involving constitutional violations. Id. First, in Davis v. Passman, 442 U.S. 228 (1979) an administrative assistant sued a Congressman under the Fifth Amendment Due Process Clause for gender discrimination in employment. Id. Second, in Carlson v. Green, 446 U.S. 14 (1980), a prisoner's estate sued federal prison employees under the Eighth Amendment Cruel and Unusual Punishments

Clause for failure to provide adequate medical treatment. Id. at 1855.

In Abbasi, the Court stated that "expanding the Bivens remedy is now a 'disfavored' judicial activity." Id. at 1857 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). In most instances, the Court's precedents now instruct that the Legislature is in the better position to consider if "'the public interest would be served'" by imposing a "'new substantive legal liability.'" Abbasi, 137 S.Ct. at 1857 (quoting Schweiker v. Chilicky, 487 U.S. 412, 426–427 (1988) (quoting Bush, 462 U.S. at 390)). In Vanderklok v. United States, the Third Circuit Court of Appeals stated that its past pronouncements on whether an implied Bivens remedy was available is no longer controlling without performing the analysis required under Abbasi. 868 F.3d 189, 199 (3d Cir. 2017).

"[A] Bivens remedy will not be available if there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857 (quoting Carlson, 446 U.S. at 18 (quoting Bivens, 403 U.S. at 396). Courts should consider whether "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" before recognizing an implied Bivens remedy in a new context. Id. at 1857-58.

"[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." Id. at 1858. "[I]f there are sound reasons to think Congress might doubt the . . . necessity of a damages remedy . . . the courts must refrain from creating the remedy." Id. Further,

> if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.

Id. (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007); see also Bush v. Lucas, 462 U.S. 367, 385–388 (1983)(recognizing that civil-service regulations provided alternative means for relief); Corr. Services Corp. v. Malesko, 534 U.S. 61, 73–74 (2001) (recognizing that state tort law provided alternative means for relief); Minneci v. Pollard, 565 U.S. 118, 127–130 (2012) (same)).

First, courts must determine whether a case presents a new Bivens context. Id. at 1859. The context is new if the case is different in any meaningful way from previous Bivens cases decided by the Supreme Court. Id. Some examples of how cases may differ in a meaningful way include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an

> officer should respond to the problem or
> emergency to be confronted; the statutory or
> other legal mandate under which the officer
> was operating; the risk of disruptive
> intrusion by the Judiciary into the
> functioning of other branches; or the presence
> of potential special factors that previous
> *Bivens* cases did not consider.

Id. at 1860. The "new-context" inquiry is easily satisfied, even if only small but meaningful differences exist. Id. at 1865.

If a court finds that a case presents a new Bivens context, the second step is to conduct the special factors analysis to determine whether Congress or the courts should decide whether a damages action should be allowed. Id. Special factors are considered in the aggregate. See, e.g., id. at 1861-62. One factor counseling hesitation to imply a Bivens remedy is when alternative methods of relief are available. Abbasi, 137 S.Ct. at 1863. A court should also consider other reasons Congress might doubt the necessity of a damages remedy. Id. at 1865.

2.    The Parties' Arguments

Plaintiff's Fifth Amendment equal protection claim, under a "class of one" theory, is based on his allegation that he was docked time from work while he went to the "pill line" for medications, while other inmates who were also receiving medications were not docked as much time. (Am. Compl., ECF No. 5 at 17.) Defendants argue that this discrimination claim arises in

the context of prison employment, a new _Bivens_ context. (Defendants' Brief, ECF No. 65-1 at 10-14.)

Defendants acknowledge that one of the three Supreme Court cases creating a _Bivens_ remedy for a constitutional violation by a federal actor, _Davis v. Passman_, involved a gender discrimination claim under the Fifth Amendment, whereas Plaintiff here presents a class of one discrimination claim under the Fifth Amendment (_Id._ at 11-12 citing _Davis_, 442 U.S. at 231.) The defendant in _Davis_ was a former Congressman. (_Id._) The plaintiff was a female deputy administrative assistant who was fired because the Congressman wanted a male in that position. (Defs' Brief, ECF No. 65-1 at 12.) The Court created a _Bivens_ remedy in part because the plaintiff did not have a Title VII remedy, which was applicable only to employees in the competitive service. (_Id._, citing _Davis_, 442 U.S. at 231.) Further, because the defendant was no longer a Congressman, equitable relief in the form of reinstatement was not available. (_Id._, citing _Davis_, 442 U.S. at 245.) Thus, in the Court's view at that time, a damages remedy was appropriate. (_Id._)

Plaintiff's Fifth Amendment claim, however, arises from within a prison, a highly regulated environment with little similarity to employment for a Congressman. (Defendants' Brief, ECF No. 65-1 at 12.) Unlike the plaintiff in _Davis_, inmates like Plaintiff who work in federal correctional institutions do not have an employer/employee relationship. (_Id._) For example,

"prisoners producing goods and services used by the prison should not be considered employees under the [Fair Labor Standards Act]." (Id. at 12-13, quoting Tourscher v. McCullough, 184 F.3d 236, 243 (3d Cir. 1999); see also, e.g., Wilkerson v. Samuels, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam) ("It is well established that a prisoner is not an employee under the [FLSA], because the relationship is not one of employment, but arises out of the prisoner's status as an inmate.")) Similarly, "for purposes of Title VII, [an inmate's] relationship with UNICOR is one of a prisoner, not an employee." (Id. at 13, quoting Wilkerson, 524 F. App'x at 779; see also Danneskjold v. Hausrath, 82 F.3d 37, 42 (2d Cir. 1996) ("the relationship is not one of employment"). Federal inmates receive compensation solely by legislative grace and primarily for their own benefit and rehabilitation. (Defendants' Brief, ECF No, 65-1 at 13, citing Amos v. United States, 13 S.Ct. 442, 446 (1987)).

Defendants note that at least two courts in this district have determined that discrimination in prison employment is a "new" Bivens context. (Defs' Brief, ECF No. 65-1 at 13-14, citing Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302 (D.N.J. Mar. 20, 2018) (Simandle, J.) (holding that claim of First Case Amendment retaliation in prison employment is "new" context); Turner v. Doe, No. 15-5942, 2018 WL 2278096 (D.N.J. May 18, 2018) (Kugler, J.)

(holding that Fifth Amendment claim alleging race discrimination in prison employment is "new" context)).

Defendants set forth several special factors that counsel against expanding the _Bivens_ remedy in this case: (1) the Prison Litigation Reform Act ("PLRA") is a comprehensive legislative scheme that reflects Congress' effort to reduce prison litigation; (2) inmates are not in an employment relationship with their prison employer, and the exclusion of prisoners from the legal protections of Title VII, the ADEA, and the FLSA reflects Congress' decision not to extend traditional employment remedies to inmates; and (3) allowing inmates to raise _Bivens_ causes of actions premised on the Equal Protection Clause would imposes costs on the Government. (Defendants' Brief, ECF No. 65-1 at 14-17.)

In opposition to Defendants' motion for judgment on pleadings, Plaintiff asserts his Fifth Amendment claim "can only be equated to the underlying claims of _Davis v. Passman_ . . . ." (Plaintiff's Brief, ECF No. 69 at 2.) Plaintiff asserts he met the three elements to allege a "class of one" equal protection violation by alleging Defendants Colina and Burns treated him differently than similarly situated persons, they did so intentionally, and there was no rational basis for the difference. (Plaintiff's Brief, ECF No. 69 at 3.) Further, Plaintiff asserts that Congress' decision not to provide victims of constitutional violations by federal actors a damages remedy is not a good reason

not to extend <u>Bivens</u> remedies to new contexts. (<u>Id.</u> at 5.) Plaintiff contends that neither prospective injunctive relief nor a writ of habeas corpus can provide him with redress for harm already done. (<u>Id.</u> at 4.)

Plaintiff maintains that he did not make a claim based on prison employment nor does he claim to be a government employee like the plaintiff in <u>Davis</u>. (<u>Id.</u> at 5.) He asserts that the PLRA's intent to weed out frivolous lawsuits is not applicable to all lawsuits. (<u>Id.</u>) He argues that the pertinent similarities between his case and the <u>Davis</u> case are that the plaintiffs are both Americans who are privileged with the protections of the United States Constitution, including equal protection claims. (Plaintiff's Brief, ECF No. 69 at 5-6.) In sum, Plaintiff contends his case does not arise in a new <u>Bivens</u> context, it arises in the same context as <u>Davis</u>; therefore, the court need not conduct a special factors analysis to imply a <u>Bivens</u> remedy.

   3.   <u>Analysis</u>

      a.   New <u>Bivens</u> context

This Court must first determine whether Plaintiff's Fifth Amendment class of one equal protection claim presents a new <u>Bivens</u> context from that in <u>Davis</u>. For the reasons discussed below, the new context inquiry is easily met here.

Plaintiff alleges that he was not treated equally to other working inmates because no other inmate's pay was docked to the

same extent as his for time spent in the pill line to take medications. This case undoubtedly arises in the context of a prison work assignment. Prison work assignments differ from traditional employment, like that in Davis, because prisoners do not have a constitutional right to compensation for work performed in prison. Johnson v. Townsend, 314 F. App'x 436, 440 (3d Cir. 2008) (citing Ali v. Johnson, 259 F.3d 317, 317–318 (5th Cir. 2001); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999), Murray v. Mississippi Dept. of Corrections, 911 F.2d 1167, 1167 (5th Cir. 1990)). Prisoners are not employees under the Fair Labor Standards Act or Title VII because the primary relationship between a prison and a prisoner is incarceration. Wilkerson v. Samuels, 524 F. App'x 776, 779 (3d Cir. 2013) (citing Tourscher, 184 F.3d at 243; Williams v. Meese, 926 F.2d 994, 007 (10th Cir. 1991)).

Plaintiff asserts his constitutional right to equal protection under the law is no different from the non-prisoner plaintiff's right in Davis. While prisoners maintain constitutional rights, those rights may be restricted or limited. Bell v. Wolfish, 441 U.S. 520, 545 (1979). "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. at 545–46 (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)).

13

In sum, prisoners who have work assignments have limited protections compared to those in traditional employment. Thus, equal protection claims in prison employment present a new <u>Bivens</u> context. <u>See</u> <u>Alexander v. Ortiz</u>, Civ. No. 15-6981(JMS-AMD), 2018 WL 1399302 at *5 (First Amendment retaliation claim in prison employment is a new <u>Bivens</u> context); <u>Turner v. Doe</u>, Civ. No. 15-5942(RBK)(AMD), 2018 WL 2278096 at *4 (D.N.J. May 18, 2018) (Fifth Amendment prison employment discrimination claim is new <u>Bivens</u> context). The Court must conduct a special factors analysis to determine whether to imply a <u>Bivens</u> remedy for Plaintiff's class of one equal protection claim under the Fifth Amendment.

b.    Special factors analysis

Defendants have set forth several special factors that this Court finds counsel hesitation in recognizing a <u>Bivens</u> remedy here. As the Supreme Court noted in <u>Abbasi</u>,

> [c]laims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

137 S.Ct at 1856.

The PLRA, 42 U.S.C. §1997e *et seq.*, demonstrates Congress' concern over the costs of prison litigation. Indeed, the Supreme Court recognized that the PLRA "contains a variety of provisions designed to bring [prisoner litigation in the federal courts] under control" after a steep rise in filings. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Potential defense and indemnification costs place a responsibility on Congress to "determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." Abbasi, 137 S.Ct. at 1856. Congress has not yet enacted a statute analogous to 42 U.S.C. § 1983 to remedy all constitutional violations by federal actors, and there is little doubt that doing so would increase actions against individual officers and employees of the Federal Government. See Abbasi, 137 S.Ct. at 1862 ("in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant. . . .")

In Woodford, the Supreme Court recognized, "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." 548 U.S. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)). This is an indication by Congress that the executive branch is best-suited to make decisions that concern prison administration.

Therefore, this is a factor that counsels hesitation in implying a Bivens remedy in a new context of prison work assignments. See Rodriguez v. Hamel, Civ. No. 15-7980(NLH)(KMW), 2018 WL 2254557 at *5 (D.N.J. May 17, 2018) (because First Amendment claims in prison housing and workplace are regulated by legislative and executive branches, special factors counsel hesitation in implying a Bivens remedy); Bell, 441 U.S. at 548 ("judicial deference is accorded [to prison administrators] . . . because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial" (citations omitted)).

In Bush v. Lucas, the Supreme Court declined to create a Bivens remedy against individual Government officials for a First Amendment violation arising in the context of federal employment of a non-prisoner, although the plaintiff had no opportunity to fully remedy the constitutional violation. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) (citing Bush, 462 U.S. 367 (1983)). In contrast, Plaintiff, by nature of his unique claim, had an opportunity for a monetary remedy under the Federal Bureau of Prisons Administrative Remedy Program, 28 C.F.R. §§ 542.10 et seq. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Plaintiff's claim was that his pay for a prison work assignment was improperly

docked. The Administrative Remedy Program could provide a remedy by correcting Plaintiff's pay if appropriate. See Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018) (BOP Administrative Remedy Program provided alternative means for relief for violation of prisoner's First and Fifth Amendment rights); cf. Bistrian v. Levi, --- F.3d ---, 2018 WL 6816924 at *8 (3d Cir. 2018) (the prison administrative grievance process could not redress prisoner's harm, a beating that he took in the prison yard). Therefore, the availability of an alternative remedy counsels hesitation in implying a Bivens remedy in this case. See Abbasi, 137 S.Ct. at 1858 ("if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action.") Therefore, in the aggregate, special factors counsel hesitation in implying a Bivens remedy in this case.

C.   FTCA Claim

1.   Legal Standard

"The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages." Baer v. United States, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 1346(b)(1)). "'[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.'" Lomando v. United States, 667 F.3d

363, 372 (3d Cir. 2011) (quoting In re Orthopedic Bone Screw Prod.
Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001); see also CNA v.
United States, 535 F.3d 132, 141 (3d Cir. 2008) ("The cause of
action in an FTCA claim ... must come from state tort law."))
"[T]he United States is subject to suit for the negligent acts of
'any employee of the Government while acting within the scope of
his office or employment.'" Id. at 374, quoting 28 U.S.C. §
1346(b)(1)).

> 2.   The Parties' Arguments

Defendants submit that the gravamen of Plaintiff's FTCA claim
is that staff at FCI Fort Dix should have changed his work
assignment or exempted him from work based on his alleged
disabilities. (Defendants' Brief, ECF No. 69 at 17.) Defendants
assert this is not a substantive tort claim because there is no
duty under New Jersey law or any professional standard requiring
correctional officers to reassign or exempt a prisoner from a work
assignment.

Defendants also contend that Plaintiff's FTCA claim fails
because the Inmate Accident Compensation Act provides the
exclusive remedy for any negligence-based claims arising from an
inmate's alleged work-related injuries. (Id. at 19.)

> 3.   Analysis

>> a.   State law basis for FTCA Claim

In his Amended Complaint, Plaintiff summarizes his FTCA claim as follows:

> Defendant United States of America did employ the named Defendants through the Department of Justice, Federal Bureau of Prisons, Federal Correctional Institution Fort Dix during the period of time and dates set forth in this complaint. Defendant United States of America is liable for the tortious conduct of the named Federal Government employees named as Defendants within this lawsuit. Plaintiff assigns liability to the United States of America for his damages incurred both physical and psychological, both compensatory and punitive.

(Am. Compl., ECF No. 5 at 25.)

New Jersey recognizes a common law negligence claim. See, e.g., Weinberg v. Dinger, 524 A.2d 366, 373-74 (N.J. 1987); Brunson v. Affinity Federal Credit Union, 972 A.2d 1112 (N.J. 2009). There are four elements to a New Jersey common law negligence claim: (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation, and (4) damages. Jersey Cent. Power & Light Co. v. Melar Util. Co., 59 A.3d 561, 571 (N.J. 2013). Violations of regulations are pertinent in determining the nature and extent of any duty of care. Steinberg v. Sahara Sam's Oasis, LLC, 142 A.3d 742, 752-53 (N.J. 2016). "'Facts that demonstrate [a regulatory] violation constitute evidence of negligence that is sufficient to overcome a motion for summary judgment.'" Id. at 753 (alteration in Steinberg) (quoting Alloway v. Bradlees, Inc., 723 A.2d 960, 970 (N.J. 1999)).

19

In screening Plaintiff's Amended Complaint, this Court construed Plaintiff's allegations that Defendants violated BOP Program Statements and regulations as part of his FTCA claim. (Opinion, ECF No. 8 at n.2.) However, Plaintiff did not allege in his Amended Complaint that violation of BOP Program Statement 1040.04 (Non-Discrimination Toward Inmates) and Program Statement 3713.29 (Diversity Management and Affirmative Employment Programs) caused him physical injury but rather emotional or psychological injury. (Am. Compl., ECF No. 5 at 15, 16, 21.)

"[A]s part of the Prison Litigation Reform Act . . . section 1346(b)(2) of the FTCA precludes inmate tort actions against the United States for 'mental or emotional injury suffered while in custody without a p29.rior showing of physical injury or the commission of a sexual act,' 28 U.S.C. § 1346(b)(2)." West v. United States, 729 F. App'x 145, 148-49 (3d Cir. 2018), reh'g denied (May 9, 2018) (per curiam). The Court will grant Defendants' motion for judgment on the pleadings on Plaintiff's FTCA claim based on BOP Program Statements 1040.04 and 3713.29.

Plaintiff alleged the following in his Amended Complaint, which forms the basis of his remaining FTCA claim. "Defendant United States of America was at all times responsible for the care and custody of the Plaintiff while in Bureau of Prisons Federal Correctional Institution Fort Dix." (Am. Compl., ECF No. 5 at 4, ¶13A.) "On December 7, 2015, Plaintiff did file a [sic]

Administrative Federal Tort Claim for personal injury resulting from prison employees['] negligence. (28 U.S.C § 2671) 'Administrative Claim No. TRT-NER-2016-01440.' Defendant Federal Bureau of Prisons denied claim on June 2, 2016, by Certified Mail No. 7012 2210 0001 4156 7076." (<u>Id.</u> at 5, ¶16.)

Plaintiff further alleged that

> [I]n view of the fact that the Plaintiff has not had an MRI of his spine done with contrast as was recommended by (2) two doctors in January of 2015. It was not until June of 2016 that the Plaintiff was seen by a neurosurgeon to be evaluated. This was a full year that the Plai[ntiff] was compelled under threat of disciplinary action to work a job in FCI Fort Dix by the listed Defendants in complete disregard to the Plaintiff's documented disabilities in an attitude of deliberate indifference to this Plaintiff's suffering from his physical and psychological disabilities.
>
> . . .
>
> 33. Defendant Colina did compel the Plaintiff to stay at work in the Food Services #10 dining hall in physically demanding positions that directly caused the Plaintiff physical pain and suffering to his spine. These jobs consisted in bending over wiping tables when the Plaintiff had a written recommendation from FCI Fort Dix medical department that he should not be bending at the waist. Plaintiff was also compelled by Defendant Colina to work in a serving line carrying and handling trays of food that weighed more than the weights that the Plaintiff was not to lift as per his disabilitie[s].
>
> . . .

34. . . . Defendant Colina should have been subject to penalties for disciplinary offenses as are set forth in Attachment A of Program Statement 3420.11 which are as follows: (#15)-Endangering the safety of or casing injury to staff, inmates, or others through carelessness or failure to follow instructions; (#16) giving an inmate an order that could be hazardous to health and safety; (#25) Physical abuse of an inmate [insofar as it relates to forcing Plaintiff to work beyond his physical abilities] . . .[2] Defendant Colina was also in violation of 28 CFR 545.23-Inmate Work Program Assignment 1(a)-Each sentenced inmate who is physically and mentally able to be assigned to an institutional work program, by his not allowing the Plaintiff to be relieved of work duties in the kitchen when he was told by the Plaintiff of his disabilities and offered to be shown disability papers from the Social Security Administration Law Court declaring the Plaintiff 100% disabled in 1988.

(Am. Compl., ECF No. 5 at 13-15.)

The BOP regulates inmate work and program assignments under 28 C.F.R. § 545.23(d), which provides:

In making the work and/or program assignment(s), staff shall consider the inmate's capacity to learn, interests, requests, needs, and eligibility, and the availability of the assignment(s). An inmate's assignment shall be made with consideration of the institution's security and operational needs, and should be consistent with the safekeeping of the inmate and protection of the public.

---

[2] Plaintiff does not allege a physical injury resulting from Colina's alleged violation of Program Statement 3420.11 (#30) Preferential treatment of inmates, (#38) Conduct that can lead others to question on employee's impartiality, and (#56) Failure to report a violation of the standards of conduct or retaliation or discrimination against those who make such a report . Therefore, this allegation is not part of Plaintiff's FTCA claim.

Violations of regulations are pertinent in determining the nature and extent of any duty of care. Steinberg, 142 A.3d at 752-53. Therefore, a New Jersey common law negligence claim provides the basis for Plaintiff's FTCA claim. See, e.g., Greenland v. United States, 661 F. App'x 210, 214-15 (3d Cir. 2016) (recognizing common law negligence as a basis for FTCA claim.)

> b. Inmate Accident Compensation Act precludes FTCA claim

Defendants also seek judgment on the pleadings on Plaintiff's FTCA claim because the Inmate Accident Compensation Act provides the exclusive remedy for any negligence-based claims arising from an inmate's alleged work-related injuries. (Defendants' Brief, ECF No. 65-1 at 19-20.) Plaintiff's FTCA claim, described above, is based on injuries he alleges from being forced to work beyond his physical limitations.

"Federal prisoners seeking compensation for injuries sustained during penal employment are limited to the remedy provided by 18 U.S.C. § 4126." Cooleen v. Lamanna, 248 F. App'x 357, 362 (3d Cir. 2007) (citing United States v. Demko, 385 U.S. 149, 151-54 (1966)); Mays v. U.S., 567 F. App'x 81, 82 (3d Cir. 2014) (same). In 1966, the Supreme Court held "[u]ntil Congress decides differently we accept the prison compensation law [18 U.S.C. § 4126] as an adequate substitute for a system of recovery by common-law torts." Demko, 385 U.S. at 153. Thus, the Court

concludes the Inmate Accident Compensation Act provides the exclusive remedy for the claim Plaintiff asserts under the FTCA. The Court will grant Defendants' motion for judgment on the pleadings on the FTCA claim.

IV.  PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff's motion for temporary restraining order is based on his claim that he is

> being subjected to identical 'retaliation' and 'obstruction' by the same Defendants with different actors at L.S.C.I. Allenwood ["FCI Allenwood Low"] for the purposes of retaliating against him for filing an Administrative Remedy Request and forcing Plaintiff to work in Food Service to remove Plaintiff from the Law Library to interfere with Plaintiff filing responses to dispositive motions in this Court and the U.S. District Courts of Maine and New Hampshire and New York.

(Mot. for TRO, ECF No. 68 at 1.)

The instant action arises out of incidents that occurred in FCI Fort Dix. The Court assumes that by "the same Defendants" Plaintiff refers to the fact that both FCI Fort Dix and FCI Allenwood Low are part of the Federal Bureau of Prisons, an administrative agency within the Department of Justice. The Federal Bureau of Prisons is not a defendant in this action, although the United States of America is the defendant to Plaintiff's FTCA claim. The "different actors" Plaintiff refers to are likely the individual prison employees or officials at FCI

24

Allenwood Low whom Plaintiff alleges retaliated against or obstructed him from working on his pro se litigation.

Plaintiff alleges he is likely to succeed on the merits of his claims that arose at FCI Allenwood Low because those claims are "practically the same claims made by the Plaintiff in the case at bar." The relief Plaintiff seeks is

> a TRO directing the Defendant Federal Bureau of Prisons and their employees to cease and desist in obstructing the Plaintiff JAMES STILE from doing his legal work in the law library and for the FBOP to at least put Plaintiff back in Recreation job and/or grant a complete dispensation from any work detail in order to attempt to meet the Court Orders of the numerous Courts [in which Plaintiff is a pro se litigant]. Further relief should be ordered that the Plaintiff not be transferred to another Federal Correctional Institution until Plaintiff has at least met obligations to respond to dispositive motions that are pending i[n] U.S. District Courts.

(ECF No. 68 at 5.)

Federal Rule of Civil Procedure 65(b) provides:

> (b) Temporary Restraining Order.

>> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

>>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies
> in writing any efforts made to give
> notice and the reasons why it should
> not be required.

A temporary restraining order may be available if there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held. Trefelner ex rel. Trefelner v. Burrell School Dist., 655 F.Supp.2d 581, 588-89 (W.D. Pa. 2009). "The standard used to evaluate whether the issuance of a temporary restraining order is warranted is the same as that used to evaluate whether the issuance of a preliminary injunction is appropriate." Ne. Lumber Manufacturers Ass'n v. Sky of New York Corp., No. CV 16-9487, 2016 WL 7491903 at *2 (D.N.J. Dec. 29, 2016) (quoting Int'l Foodsource, LLC v. Grower Direct Nut Co., Inc., Civ. No. 16-cv-3140(WHW)(CLW), 2016 WL 4150748 at *6 (D.N.J. Aug. 3, 2016)).

> A party seeking a preliminary injunction must
> show: (1) a likelihood of success on the
> merits; (2) that it will suffer irreparable
> harm if the injunction is denied; (3) that
> granting preliminary relief will not result in
> even greater harm to the nonmoving party; and
> (4) that the public interest favors such
> relief.

Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

Plaintiff cannot establish the likelihood of success on the merits of claims that are not at issue in this litigation. Plaintiff's claims in this case arose out incidents that occurred while he was incarcerated in FCI Fort Dix. The facts he asserts in

support of his motion for a temporary restraining occurred while he was incarcerated at FCI Allenwood Low. Plaintiff asserts that he is exhausting his administrative remedies for his new claims.

It appears that Plaintiff has not yet filed a lawsuit asserting his claims arising out of his incarceration in FCI Allenwood Low. When he does so, his motion for a temporary restraining order may be brought in that action. In any event, Plaintiff's remaining claims in this action will be dismissed because the Court will grant Defendants' motion for judgment on the pleadings. Plaintiff cannot show the likelihood of success in a similar action based on this action because the Court ultimately dismissed all of Plaintiff's claims.

V.    CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motion for judgment on the pleadings and deny Plaintiff's motion for a temporary restraining order.

An appropriate Order follows.

Date: January 22, 2019

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**UNITED STATES DISTRICT JUDGE**